```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

UNITED STATES OF AMERICA      )
                              )
          v.                  )     Case No. 2:12-cr-62
                              )
MICHAEL L. RILEY              )
```

## OPINION AND ORDER

Pending before the Court are two motions for compassionate release filed by Michael Riley, through counsel, pursuant to 18 U.S.C. § 3582(c)(1)(A).  Riley's first motion, filed in January 2020, seeks release on the ground that his elderly father is in failing health, requires daily care, and none of Riley's siblings can provide that care.  Riley's second motion, filed in April 2020, asserts that his asthma places him in danger of serious illness in light of the COVID-19 pandemic.  For the reasons set forth below, Riley's motions are **granted.**

## Factual Background

On May 29, 2013, Riley was sentenced to the mandatory minimum of 120 months, to be followed by eight years of supervised release, after pleading guilty to cocaine distribution conspiracy.  He did not appeal his sentence, did not file for habeas corpus relief, and has reportedly worked hard at rehabilitation.  Riley is currently incarcerated at a low-security facility where he has been allowed to work as a driver, traveling without supervision outside the prison and sometimes across state lines.  His Bureau of Prisons Classification Form

indicates he is not considered a danger to public safety. The BOP projects his release date as June 26, 2022.

Riley's initial motion for compassionate release informed the Court that his elderly father is in need of daily care and that none of his siblings can provide such care. His father has submitted a letter detailing his medical condition and confirming that Riley is the only family member available to provide him with care. Riley's more recent motion for emergency release, filed in April 2020, reports that he suffers from asthma and is therefore in danger of serious complications if he contracts the COVID-19 virus while in prison.

Prior to filing his initial motion for compassionate release, Riley requested relief from the prison Warden. That request was denied on October 22, 2019. After the COVID-19 pandemic issue arose, Riley again petitioned the Warden for compassionate release. That petition was reportedly submitted on April 11, 2020, and denied on April 20, 2020.

## Discussion

**I.   Exhaustion**

Riley moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which permits a court to "reduce a term of imprisonment." A court may reduce a defendant's sentence only "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There is no dispute that the 30-day period for each of Riley's relief requests has expired, and that the BOP has not filed a motion on his behalf. Riley has therefore satisfied the exhaustion requirement.

**II. Sentence Reduction**

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce the term of imprisonment when (1) "extraordinary and compelling reasons warrant such a reduction," (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). Congress delegated to the United States Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction." *See* 28 U.S.C. § 994(t). The applicable policy statement is found at Sentencing Guideline § 1B1.13 and the accompanying commentary.

Section 1B1.13 provides four circumstances that may constitute "extraordinary and compelling reasons warrant[ing] the [sentence] reduction," one of which is "suffering from a serious physical or mental condition . . . that substantially diminishes

3

the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). A second is family circumstances, defined as "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* § 1B1.13 n.1(C). The Sentencing Commission also offered a "catch-all" provision, stating that a defendant may be entitled to a sentence reduction if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in connection with, the reasons described in subdivisions (A) through (C)" of the application note. *Id.* § 1B1.13 n.1(D).

After the Sentencing Commission issued U.S.S.G. § 1B1.13, Congress passed the First Step Act, amending 18 U.S.C. § 3582(c)(1)(A) such that inmates could move for compassionate release without a motion from the Director of the Bureau of Prisons. "The First Step Act did not change the statutory criteria for compassionate release, but it did change the procedures, so that the Bureau of Prisons is no longer an obstacle to a court's consideration of whether compassionate

4

release is appropriate." *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019).

Since the First Step Act, courts have questioned whether they now have increased discretion to determine what is an "extraordinary and compelling" circumstance. "[T]he majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant [a court] the same discretion as that previously given to the BOP Director, and therefore the Court may independently evaluate whether [the defendant] has raised an extraordinary and compelling reason for compassionate release." *United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020). Courts still consider U.S.S.G. § 1B1.13, but do so for guidance rather than for a final determination of what may, or may not, constitute grounds for compassionate release. *See, e.g, United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019) ("[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary"); *Fox*, 2019 WL 3046086, at *3 ("the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive").

Riley's initial motion cites family circumstances. As discussed above, Section 1B1.13 limits relief to family circumstances involving either the inmate's children or spouse. Since the First Step Act amendments, courts have taken a broader view of family circumstances justifying compassionate release. For example, in *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019), the court considered the inmate's request for release so that he could care for his ailing mother.

> Mr. Bucci's circumstances are similar to those that the Sentencing Commission specifically articulated as examples of "extraordinary and compelling reasons" in its policy guidance. *See* U.S.S.G. § 1B1.13 n.1. Mr. Bucci is the "only available caregiver," *id.* § 1B1.13 n.1(C)(ii), for an ailing, close member of his family: his mother. This Court sees no reason to discount this unique role simply because the incapacitated family member is a parent and not a spouse.

*Id.* at 2 (record citations omitted). The *Lisi* court reached the same conclusion, reasoning that "[t]he animating principle of the Family Circumstances category is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver." 2020 WL 881994, at *5.

Riley's father is in failing health. His letter to the Court explains that he suffers from heart disease, hypertension, lung disease, and vision issues including macular degeneration and glaucoma. He is reportedly obese, has fallen several times

in recent years, and because he lives alone sometimes takes hours after a fall to either get up or call for emergency assistance. Both Riley and his father attest that Riley is the only family member available to provide his father with daily care. Accordingly, as in *Bucci* and *Lisi*, the family circumstances in this case offer a compelling reason for release.

The Court also considers Riley's circumstances under the catch-all provision in U.S.S.G. § 1B1.13 n.1(D). *See, e.g., United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *15 (E.D.N.Y. Apr. 22, 2020) (noting that a district court "has the authority to grant the relief sought in this case—namely, to determine what 'Other Reasons' (as that term is used in Application Note 1(D)) qualify as 'extraordinary and compelling' regardless of BOP's view on the matter and without having to await a someday-updating by the Commission of its unquestionably outdated policy statement"). The Sentencing Commission provided that "other reasons" may justify compassionate release, either alone or in connection with the Section 1B1.13 listed circumstances. Here, Riley's family circumstances are considerable, and as he argues in his most recent motion, his medical condition adds significant weight to his request.

Riley is a federal inmate in the midst of a global pandemic. Courts have noted that prisons, by nature, are particularly at

risk of spreading the disease.  *See United States v. Park*, No. 16-CR-473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk."); *United States v. Resnick*, No. 14-cr-810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (noting "the limitations in a prison environment ... on practicing the hygienic and social distancing techniques that the Center for Disease Control has put in place to prevent rapid transmission").  Furthermore, Riley suffers from asthma, which the Centers for Disease Control and Prevention has identified as a condition that is likely to place sufferers at an increased risk of serious illness or death from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html; *see also United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (footnotes omitted)) ("COVID-19 presents a heightened risk for incarcerated defendants ... with respiratory ailments such as asthma.  The Centers for Disease Control warns that persons with asthma are at high risk of serious illness if they contract the disease.").

"Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's

pre-existing health conditions, in combination with the increased risks of COVID-19 in prisons, constitute 'extraordinary and compelling reasons' warranting relief." *United States v. Peters*, No. 3:18-CR-188 (VAB), 2020 WL 2092617, at *3 (D. Conn. May 1, 2020). Those rulings have included claims by inmates suffering from respiratory ailments. *See, e.g., United States v. Smith*, No. 12 CR 133 (JFK), 2020 WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13, 2020) ("[Mr.] Smith's age and medical conditions—such as his asthma—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while at the MDC or a halfway house, and would substantially diminish his ability to provide self-care within those environments." (citing U.S.S.G. § 1B1.13 comment n.1(A)(ii))). Riley is over 50 years old, and his asthma condition is well-documented. Given the current COVID-19 crisis, the Court finds that his medical condition qualifies as an extraordinary and compelling reason favoring a reduced sentence.

The Court next considers whether a reduced sentence satisfies the 18 U.S.C. § 3553(a) sentencing factors. First, Riley has served a substantial portion of his sentence. Second, the resulting sentence would not minimize the seriousness of the offense, would promote respect for the law, and would provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A); *see, e.g., United States v. Rodriguez*, 2020 WL 1627331, at *12 (E.D. Pa.

9

Apr. 1, 2020) (granting the section 3582(c)(1)(A)(i) motion of a defendant who had "served the vast majority of his mandatory minimum sentence"). Section 3553(a) also requires that a sentencing court consider the "the need to provide the defendant with needed ... medical care." *Id.* As discussed above, prison is a dangerous environment for Riley at this time, and his medical needs will be best served outside of BOP custody. Finally, the Court notes that Riley has made concerted efforts at rehabilitation, and that the BOP does not consider him a threat to the public. *See* U.S.S.G. § 1B1.13(2).

## **Conclusion**

Accordingly, Riley's motions for compassionate release (ECF Nos. 123, 126) are **granted**. His period of incarceration is reduced to time served, and he is to be released from BOP custody effective immediately. Upon his release, Riley shall commence his period of supervised release status, the first three months of which shall be spent in home confinement.

DATED at Burlington, in the District of Vermont, this 12th day of May, 2020.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge